## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

ANTHONY J. SCHALL,

|                    |                    |
|--------------------|--------------------|
| **Plaintiff,**     | **8:22CV317**      |
| **vs.**            | **ORDER**          |
| **NODAK INSURANCE COMPANY** |           |
| **Defendant.**     |                    |

This matter comes before the Court following a discovery dispute conference held with counsel for the parties on January 10, 2024, before the undersigned magistrate judge. The Court heard arguments from counsel regarding their disputes concerning numerous interrogatories and Requests for Production (RFPs). Defendant, Nodak Insurance Company, requested that the Court order Plaintiff, Anthony Schall, to provide complete answers and responses to Interrogatory Nos. 8, 9, 14, and 16, and RFP Nos. 3, 4, 5, 7, 16, 17, 18, 24, 25, 26, 28, 29, and 31. Plaintiff requested that the Court order Defendant to provide complete answers and responses to Interrogatory Nos. 2, 5, 6, 7, 8, 9, 10, and 11, and RFP Nos. 5, 11, 20, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 38, 41, 42, 43, 44, 46, 48, 49, and 51-52. In advance of the conference, the parties provided the Court with letters outlining the disputes, copies of the disputed discovery requests and each party's answers and responses, and two separate discovery dispute charts. The Court will set forth its rulings on the parties' disputes below.

## BACKGROUND

Plaintiff was employed by Defendant from June 2019 until March 11, 2022, as a senior claims representative. In September 2020, Plaintiff suffered a stroke, which adversely impacted his abilities to engage in major life functions. Plaintiff alleges that for sixteen months after his stroke, Defendant provided his requested reasonable accommodations, but after his doctor opined in February 2022 that Plaintiff should "avoid climbing on ladders and roofs" due to his permanent disability, Defendant terminated Plaintiff's employment on March 11, 2022. (Filing No. 16).

Plaintiff contends that prior to February 2022, Defendant had provided drones to numerous Nebraska adjusters to adjust "high" claims such as roofs, and in the fall of 2021,

Plaintiff attended an all-day drone training session for Defendant's Nebraska adjusters led by Defendant's managers. Plaintiff asserts that, after Defendant rescinded Plaintiff's accommodation, Defendant rejected Plaintiff's request to use a drone for "climbing" claims, and also rejected a coworker's suggestion to reorganize claims to assign all vehicle claims to Plaintiff. (See Plaintiff's letter, attached).

Plaintiff alleges Defendant engaged in further discrimination and retaliation when it rejected his February 2022 application for a Liability Claim Representative position. Plaintiff represents that he learned his replacement was a non-disabled person who "failed miserably at the job" and has since been fired. (See Plaintiff's letter, attached).

Plaintiff commenced this action against Defendant for violations of the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. § 48-1101 et seq., and the Americans with Disabilities Amendments Act (ADAAA), as amended, 42 U.S.C. § 12101 et seq. Plaintiff seeks damages in the form of lost wages and the value of job-related benefits, as well as pre- and post-judgment interest, compensatory damages (including damages for emotional distress, as indicated in Plaintiff's discovery responses and on the record during the telephone conference), reinstatement and/or front-pay, and punitive damages. (Filing No. 16). Defendant raises several affirmative defenses, including Plaintiff's failure to mitigate damages and that Plaintiff's continued employment would have posed an undue hardship on Defendant. (Filing No. 17).

The parties' discovery disputes primarily arise out of their differing views of the proper scope of discovery relevant to Plaintiff's claims and requested damages, and Defendant's defenses. Plaintiff argues Defendant's discovery responses are vague and it simply "dumped 31,000 documents on Plaintiff" to respond to Plaintiff's discovery requests. (See Plaintiff's letter, attached). Defendant counters it has fully answered and responded to Plaintiff's requests, and asserts the 31,000 documents it produced are the claim files and notes for all claims in Plaintiff's territory during the period of his disability, which contain all the information Plaintiff seeks. Defendant asserts it is not obligated to create a document or otherwise summarize the information contained within those documents. Defendant likewise takes issue with Plaintiff's responses to written discovery, asserting Plaintiff has objected to providing key categories of information in discovery, including information related to his earnings and income beyond ordinary wages, his communications with third parties regarding this litigation and his claimed

2

damages, and audio and video recordings of Defendant's employees. (See Defendant's letter, attached).

## DISCUSSION

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The proportionality analysis requires the court to weigh "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation[.]" Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (citation omitted). The broad scope of Rule 26 generally allows discovery "unless it is clear the information sought can have no possible bearing on the case." Ingram v. Covenant Care Midwest, Inc., 2010 WL 1994866, at *3 (D. Neb. 2010). But, "[w]hile the standard of relevance in the context of discovery is broader than in the context of admissibility . . . this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery," and "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Id. (internal citations omitted). Because discovery rules should "'be construed to secure the just, speedy, and inexpensive determination of every action' . . . judges should not hesitate to exercise appropriate control over the discovery process." Blackmore v. Union Pac. R.R. Co., No. 8:21CV318, 2022 WL 3718115, at *5 (D. Neb. Aug. 29, 2022) (quoting Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F.3d 922, 927 (8th Cir. 1999)).

## I.      Defendant's Disputed Discovery Requests to Plaintiff

Defendant's pre-hearing chart and statement indicated Defendant sought the Court to order Plaintiff to provide complete answers and responses to Interrogatory Nos. 8, 9, 14, and 16, and RFP Nos. 3, 4, 5, 7, 16, 17, 18, 24, 25, 26, 28, 29, and 31. During the telephone conference,

counsel advised their disputes with respect to Interrogatories 14, 16, and RFP 18 have been resolved. The Court will address the remaining disputed requests below.

- Interrogatory 8 and RFP 7 request Plaintiff to identify and produce documents regarding "all earnings, income, employee benefits, financial assistance, or monies you have received since the end of your employment with Defendant."
  - Plaintiff has produced his end of year paystub for his new employment, his 2019-2022 W-2s, and will produce his 2023 W-2 when he receives it, but objects to answering or producing anything further because payments such as unemployment benefits, social security benefits, workers' compensation benefits, etc., cannot be offset against a backpay award under the collateral source rule, and are therefore irrelevant.
  - Defendant contends the collateral source rule is an evidentiary rule, not a discovery rule, and all of Plaintiff's sources of income are relevant to backpay offset and potentially Plaintiff's degree of emotional distress.

Defendant is seeking Plaintiff's sources of income post-separation primarily for purposes of mitigation and backpay offset. See *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 641 (8th Cir. 1997) ("This duty to mitigate requires a plaintiff to use reasonable diligence in finding other suitable employment and not to refuse a job that is substantially equivalent to the one at issue."). However, "[m]ost courts have refused to deduct such benefits as social security and unemployment compensation" as collateral source payments. *Gaworski v. ITT Com. Fin. Corp.*, 17 F.3d 1104, 1112 (8th Cir. 1994). Although Defendant is correct that information within the scope of Rule 26(b) "need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1), and the scope of permissible discovery is broader than the scope of admissibility, see *Hofer*, 981 F.2d at 380, the Court nevertheless agrees with Plaintiff that collateral payments Plaintiff may have received, such as unemployment and social security benefits, are not relevant. To the extent those payments could be relevant to Plaintiff's claim for garden variety emotional distress, the Court finds such relevance is so minimal that it is not proportional to the needs of the case, particularly where Plaintiff has already disclosed his W-2s. See, e.g., *Peterson v. Seagate U.S. LLC*, No. CIV.07-2502(MJD/AJB), 2009 WL 3430150, at *7 (D. Minn. Oct. 19, 2009)

4

(concluding the plaintiff's social security and unemployment benefits were irrelevant to any claim or defense in an ADEA action, and that the plaintiff's W-2s or 1099s would satisfy a defendant's request for the plaintiff's earnings and income post-separation of employment). The Court finds Plaintiff has adequately responded to these discovery requests.

- Interrogatory 9 asks Plaintiff to itemize in detail the amount of all past, present, and anticipated damages.
  - o Plaintiff has answered this interrogatory, but objects to Defendant's request for Plaintiff to provide a figure or range for his emotional distress damages because he has only alleged garden variety emotional distress, which will be determined by the jury.
  - o Defendant asserts that if Plaintiff has a figure or range of emotional distress, Plaintiff must disclose that to Defendant ahead of trial.

Courts have concluded that "a plaintiff need not provide a calculation for compensatory damages pertaining to emotional distress, as such calculations are necessarily vague and may not be amendable to the type of calculation disclosure contemplated by Rule 26(a)(1)(C)." *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 281-82 (D. Minn. 2007) (collecting cases); see also *Williams v. Trader Publishing*, Co., 218 F.3d 481, 486 n. 3 (5th Cir. 2000) ("Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C).").

Here, to the extent that Plaintiff does not intend to suggest a specific amount or range to the jury for emotional distress damages, the Court will not require Plaintiff to disclose a computation of those damages. During the call, Plaintiff's counsel suggests she will not know until the end of trial what amount she would suggest to the jury, as it "depends on how the evidence comes in." However, if Plaintiff does intend to suggest any specific amount or range to the jury for emotional distress damages, he shall be required to provide to Defendant the figure or range, and the basis for that figure or range, by the close of discovery. Otherwise, the amount of emotional distress damages is left to the province of the jury. See, e.g., *Kutz v. NGI Cap., Inc.*, No. 22-CV-1623 (NEB/ECW), 2023 WL 3790766, at *9 (D. Minn. June 2, 2023) ("As such, to

the extent Plaintiff intends to ask the jury for a specific figure or suggest a range or ranges for emotional distress damages at trial, she must disclose them to Defendants, along with the basis for such figure or ranges, including the methodologies used to calculate them and documents relied on.").

- RFP 3 and RFP 4 request Plaintiff to produce documents and communications exchanged between him and third parties, including Plaintiff's wife, regarding his claims and alleged damages or Defendant's affirmative defenses.
  - Plaintiff objects to producing potentially responsive communications with his wife due to spousal privilege.
  - Defendant asserts Plaintiff's communications with his wife do not necessarily fall within the scope of spousal privilege, which is limited to communications intended to be private and made in reliance on the sanctity of marriage, particularly where Plaintiff's wife is listed as a witness. Defendant argues the privilege cannot be used as a shield and a sword if Plaintiff's wife intends to testify.

The marital confidential communications privilege protects private intra-spousal communications made during the marriage. *United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992). For the privilege to apply, the communication (1) must be made during a valid marriage; (2) must be words or acts by one spouse that are intended as a communication to the other spouse, and (3) must be made in confidence. See *id.*

The Court finds that Plaintiff has properly invoked the marital confidential communications privilege as to his communications, such as text messages or other electronic messages, exchanged only between him and his wife. However, if any of those messages or communications were shared with or contain other recipients aside from Plaintiff and his wife, those communications were not made in confidence and must be produced if they are responsive to Defendant's requests. Merely listing Plaintiff's wife as a witness does not act as a broad waiver of their private marital communications. Additionally, Plaintiff testified during his deposition that he typically communicated with his wife face-to-face, so there are likely no responsive communications being withheld.

6

- RFP 5 asks Plaintiff to produce "all documents and communications exchanged between you and any prospective employer since the end of your employment with Nodak, including, but not limited to, applications, cover letters, resumes, negotiations over terms of employment, offers of employment, etc."
  - Plaintiff produced his resume in response to this request, but Defendant seeks confirmation whether any other communications or other application materials exist.
  - Plaintiff represents he has produced all responsive documents and is not withholding anything responsive to this request.

Based upon Plaintiff's representation to the Court that he has produced all documents responsive to this request, the Court deems this dispute resolved.

- RFP 16 and 17 ask Plaintiff to produce all documents that the individuals he intends to call as witnesses will rely upon as part of their testimony, or that those witnesses have reviewed or will review in the course of preparing to testify.
  - Plaintiff objects that, other than himself and his family, Defendant is in control of all the witnesses in this case, and Plaintiff cannot know what documents the defense witnesses will review or rely upon. Plaintiff further objects that the documents upon which Plaintiff will rely to prepare his witnesses is attorney-client privileged and/or would disclose the mental impressions of counsel. Non-privileged, discoverable documents upon which Plaintiff may rely have already been produced.
  - Defendant asks that Plaintiff withdraw his objection and supplement his responses.

The Court will sustain Plaintiff's objections and finds he has adequately responded to these RFPs at this time.

- RFP 24 asks Plaintiff to, with respect to any emotional distress damages, "produce all documents and correspondence, including any and all text messages, voice messages,

emails, video messages and/or picture messages, and any other recorded communications that were created, sent, or received from September 1, 2020 to the present, that concern, relate to, or contain any information regarding any alleged mental pain, severe emotional distress, embarrassment, humiliation, mental anguish, loss of capacity for enjoyment of life, impairment of working ability, loss of dignity, loss of or diminution of earning or earning capacity, physical or emotional state, and any stressors that you caused and/or exacerbated an emotional injury to you including, but not limited to, family issues, financial issues, health issues, and others."

- o Plaintiff objects that this request is not limited to non-privileged communications, and is overbroad, unduly burdensome, and lacks relevance.

- o Defendant asserts Plaintiff has put his emotional state at issue by alleging damages for emotional distress. During the call, Defendant offered to strike the word "embarrassment" and states the remainder of the request is clearly relevant.

- o In the discovery dispute chart, Plaintiff represents the parties agreed to limit this request to counseling records from 9/1/2020 through the present, but Defendant does not agree that the parties made that agreement. Defendant states it proposed limiting this request to Plaintiff's written communications with individuals listed in either party's initial mandatory disclosures, including Plaintiff's wife. Plaintiff further responds there are likely no responsive documents because Plaintiff is not a "big texter" and does not use social media.

"A plaintiff is entitled to damages for emotional distress when there is evidence of actual emotional distress caused by an employer's discriminatory acts in violation of the ADA." *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1096-97 (8th Cir. 2007). "Emotional distress damages 'must be supported by competent evidence of genuine injury.'" *Id.* (quoting *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1196 (8th Cir. 2001)). "A plaintiff's own testimony can be sufficient for a finding of emotional distress, and medical evidence is not necessary. . . . The plaintiff's testimony must "offer specific facts as to the nature of his claimed emotional distress and the causal connection to [the employer's] alleged violations." *Id.* (citations omitted). "[E]ven if Plaintiff does not intend to ask for a specific amount (or suggest any figure or range) but intends to offer evidence supporting any non-economic award, Plaintiff

must disclose responsive discovery regarding the claim." *Kutz*, 2023 WL 3790766, at *8 (quoting *Lewis v. City of Burnsville*, No. CV 19-1117 (ECT/BRT), 2020 WL 3496990, at *4 (D. Minn. June 29, 2020).

Plaintiff is claiming he sustained damages for emotional distress due to Defendant's discriminatory acts. Defendant is entitled to discovery regarding that claim for damages, including evidence or communications Plaintiff intends to rely on to support his claim, and evidence or communications that would tend to disprove the causal connection of Plaintiff's claimed emotional distress to Defendant's alleged violations. See, e.g., *Kutz*, 2023 WL 3790766, at *19 (compelling an employment discrimination plaintiff's production of texts, emails, and social media postings regarding her emotions, feelings, and mental states as relevant and proportional to the needs of the case where the plaintiff claimed emotional distress damages from the defendant's discrimination); see also *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 343 (D. Minn. 2011) ("[G]iven that plaintiff has placed her employment with and termination of employment from defendant, along with her mental disability and emotional state at issue, the defendant is entitled to information from her social media websites that bear on these topics, including other stressors in plaintiff's life that could account for the emotional distress she is now claiming was due to her treatment at and termination of employment from defendant.").

Defendant's request is limited in temporal scope and seeks discovery related to Plaintiff's mental state and stressors relevant to Plaintiff's claimed emotional distress damages. Accordingly, the Court will overrule Plaintiff's objections and require him to supplement this response, to the extent any non-privileged responsive documents, recorded communications (excluding those communications shared solely and privately with his wife), social media posts, pictures, videos, or the like exist.

- RFP 25 and 26 request Plaintiff to produce his complete social media profiles or networking site profiles, including any photographs or videos posted by or tagging Plaintiff, regarding this lawsuit or Defendant's affirmative defenses, or regarding Plaintiff's emotional state and any stressors that would exacerbate an emotional injury. Defendant subsequently limited these requests to the temporal scope of September 1, 2020, to the present.

     o   Plaintiff objected that these requests were overbroad and unduly burdensome. Plaintiff testified during his deposition he had no social media, but clarified during the telephone conference he has a Truth Social account used only for political posts.

Plaintiff's counsel states she objected to these requests because she does not want to set a precedent for future cases regarding the discoverability of these documents. But, based upon Plaintiff's counsel's representation to the Court that Plaintiff only has a Truth Social account used only for political posts, the Court need not determine whether Plaintiff's objection is proper because there are no documents responsive to these requests.

- RFP 28 and 29 ask Plaintiff to produce any documents or recorded statements or audio or video recordings relevant to this case.
  - o Plaintiff objected on privilege grounds and referred Defendant to the NEOC file.
  - o Defendant primarily wants to know whether Plaintiff is withholding any responsive recordings.
  - o During the telephone conference, Plaintiff's counsel represented that the only recorded statements she is aware exist are in the NEOC file as part of the NEOC investigation. Plaintiff is not withholding any responsive items, as he did not take any recorded statements and is not in possession of any recordings.

Based upon Plaintiff's counsel's representations made on the record during the telephone conference, the Court finds this dispute is resolved.

- RFP 31 requests Plaintiff produce "All documents or records that relate to, support, refute, or involve any of the allegations and claims asserted in your Amended Complaint that are not produced pursuant to the previous requests."
  - o Plaintiff objects this request is vague, overbroad, and unduly burdensome, and is an improper "catch all" discovery request that is not specific and attempts to "fill the holes in discovery." Plaintiff also is not aware of any documents he is withholding.

The Court will sustain Plaintiff's objection.  Rule 34 requires document requests to "describe with reasonable particularity" the documents being requested. Fed. R. Civ. P. 34(b)(1)(A).  Such a "catch-all" request is vague and overbroad.

## II.     Plaintiff's disputed discovery requests to Defendant

Plaintiff requests that the Court order Defendant to provide complete answers and responses to Interrogatory Nos. 2, 5, 6, 7, 8, 9, 10, and 11, and RFP Nos. 5, 11, 20, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 38, 41, 42, 43, 44, 46, 48, 49,  51, and 52.  Counsel for Defendant has since advised the Court that Defendant anticipates Interrogatory No. 5, and RFPs 11, 26, 27, 31, 38, 49 could be resolved in whole or in part by its anticipated ESI production.  Plaintiff disagrees, asserting ESI production will not cure the deficiencies with Defendant's supplemental answer to Interrogatory No. 5, and that the ESI production will not fully resolve the disputed RFPs because they request more than emails—they also request "non-privileged material documents and recordings." (See March 22, 2024, email thread, attached). The Court will address the disputed requests below.

- Interrogatory No. 2 and RFP 5 ask Defendant to identify "all non-privileged facts and documents upon which you rely in support of all defenses and affirmative defenses alleged," and to produce all non-privileged documents.
  - o  Defendant objects that this is an overly broad and unduly burdensome contention interrogatory that would require Defendant to provide a narrative account of its case.  Defendant also states it has produced responsive documents and is not withholding any documents it plans to rely on to establish any affirmative defense.
  - o  Plaintiff maintains this interrogatory is not overbroad if it is limited to non-privileged "material" facts and documents regarding Defendant's affirmative defenses.

"[A]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial

conference or some other time." Fed. R. Civ. P. 33(a)(2). "A contention interrogatory will be considered overly broad and unduly burdensome if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case." *Smartmatic USA Corp. v. Lindell*, No. 22-CV-98 (WMW/JFD), 2023 WL 6890929, at *7 (D. Minn. Oct. 19, 2023) (internal quotation marks and citation omitted). "But overbroad contention interrogatories may be 'readily corrected by limiting the request to principal or material facts' related to an allegation." *Id.* (quoting *Kinetic Co. v. Medtronic, Inc.*, No. 08-CV-6062 (JMR/AJB), 2010 WL 11561275, at *4 (D. Minn. Nov. 23, 2010) (internal quotation marks omitted); see also *Hein v. State Farm Mut. Auto. Ins. Co.*, No. 5:22-CV-05045-LLP, 2023 WL 5804018, at *5 (D.S.D. Sept. 7, 2023) ("[C]ontention interrogatories may be viewed by courts as overly broad and unduly burdensome on their face by asking for 'each and every fact' or 'all facts' which support a claim or defense. . . . When faced with contention interrogatories with overly broad language, courts typically direct that an answer still be provided but narrow the scope of the needed response to the 'material' or 'principal' facts supporting a specific claim or defense.").

The Court finds that Defendant properly objected to Plaintiff's original interrogatory as overbroad and unduly burdensome because it requested "all" non-privileged facts and documents; however, Plaintiff's agreement to limit this interrogatory to non-privileged, "material" facts and documents regarding Defendant's affirmative defenses corrects that infirmity. Plaintiff is entitled to discover what material facts Defendant relies on to support its affirmative defenses. As such, the Court will direct Defendant to supplement its answer to identify non-privileged material facts supporting its affirmative defenses. The Court will further instruct Defendant to identify by bates number the principal documents it will rely on to support those defenses in response to RFP 5.

However, because this is a contention interrogatory, the court "may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *Atwood v. Union Pac. R.R. Co.*, No. 8:21CV394, 2022 WL 17585893, at *6 (D. Neb. Dec. 12, 2022) (quoting Fed. R. Civ. P. 33(a)(2)). "[I]t is generally accepted that courts '[will] not order responses to contention interrogatories until late in the pretrial period' and that 'the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period.'" *Id.* Case progression

deadlines are currently stayed pending the Court's resolution of the instant disputes, see Filing No. 32, so the Court will not set a deadline for Defendant to supplement its response at this time. Once the Court reinstates case progression deadline, Defendant shall supplement its answer to this contention interrogatory by the close of the written discovery deadline, or by another date agreed to by the parties.

- Interrogatory No. 5 and RFP 27 ask, "From September 25, 2020 through the March 2022, please fully describe all non-privileged communication (verbal, written, electronic) between two or more persons known of by Defendant (between each other and/or with the Plaintiff or his medical provider) regarding Plaintiffs physical condition, request(s) for reasonable accommodation, investigation(s) and/or analysis undertaken and finding(s)/conclusion(s) of each investigation and/or analysis regarding each request for accommodation made, and Defendant's response to each request for accommodation and supporting rational for each response. (This is limited to health conditions related to Plaintiff's stroke and to Defendant's human resource, management, and Nebraska claims adjuster employees.)" and for Defendant to produce all non-privileged documents regarding the same.
  - Defendant's supplemental answer provides, "In early 2022, Nodak requested that Plaintiff provide updated information regarding the status of his physical restrictions and their anticipated duration. On February 10, 2022, Nodak received documentation from Plaintiff's treating physician explaining that Plaintiff remained incapable of climbing on ladders or roofs and that these restrictions were permanent. . . . On February 17, 2022, Plaintiff requested that he be permitted to use a drone to evaluate property damage as an accommodation, since he was incapable of climbing to perform his job duties.  After receiving his updated doctors' note and accommodation request, Chris Oen, Richard Laber, Pat Duncan, and Matt Horner met to discuss Plaintiff's permanent restrictions and his request to use a drone for all claims that involved climbing. Ultimately, the drone proposal was not feasible for several reasons. . . . Nodak determined that Plaintiff's request to use drones for all claims that required climbing could not be accommodated. . . Plaintiff did not request any other form of accommodation.

13

However, Nodak internally explored other potential accommodations on its own initiative in the hopes of retaining Plaintiff. For instance, Chris Oen spoke with Rich Laber and Shawn Rampelberg about whether it would be possible for Plaintiff to handle exclusively auto claims (which generally do not require climbing) instead of multi-line claims. . . . After evaluating Plaintiff's request to use a drone and considering other potential arrangements, Nodak encouraged Plaintiff to apply for a Liability Claim Representative position. Nodak interviewed Plaintiff for the position but ultimately offered the role to another candidate."

o   Defendant states its 2-page supplemental answer to this interrogatory identifies four individuals and various discussions, and there is nothing left to answer. During the telephone conference, defense counsel represented it had retained a vendor to extract electronic data and would soon begin production of documents regarding responsive communications following an ESI search.

o   Plaintiff asserts Defendant's supplemental answer is inadequate because it refers to "Nodak" throughout, but because Nodak is an entity, it can only act through individuals.  Plaintiff also asserts the answer is vague because it does not identify dates, specific communications, and does not describe in sufficient detail the investigations, analysis, and findings.

The Court finds merit to Plaintiff's assertions that Defendant's answer to this interrogatory is insufficient.   For example, Defendant answers, "Nodak determined that Plaintiff's request to use drones for all claims that required climbing could not be accommodated," but does not identify who made that determination, or when that determination was made.  Defendant identifies one conversation where Chris Oen spoke with Rich Laber and Shawn Rampelberg about whether it would be possible for Plaintiff to handle exclusively auto claims, but does not identify when that conversation occurred.   "Nodak" also encouraged Plaintiff to apply for a Liability Claim Representative position, but Defendant does not identify who did so or when that occurred.  Plaintiff is correct that "Nodak" is an entity that can only act through individuals, so statements like "Nodak determined" or "Nodak received documentation" or "Nodak encouraged" does not indicate *who* at Nodak took those actions, or when.

14

"Defendant need not attempt to provide a verbatim description of every conversation, but it must at least identify that the conversation occurred, the topic discussed, when it occurred, who was present, and generally what was stated and/or decided and by whom." *Hartman v. Sunbelt Rentals, Inc.*, No. 4:21CV3328, 2022 WL 17253529, at *7 (D. Neb. Nov. 28, 2022). And, although "Plaintiff could obtain some of this information by deposing [the identified individuals], . . . the quality of those depositions, and the ability of Plaintiff's counsel to prepare in advance, will be less without written discovery responses. Moreover, a party is not allowed to unilaterally decide that written discovery can be ignored because depositions can and should be taken instead." *Id.*

After review, the Court will order Defendant to supplement its answer to "at least identify that the conversation occurred, the topic discussed, when it occurred, who was present, and generally what was stated and/or decided and by whom," in response to Plaintiff's interrogatory. Defendant may also wish to supplement this answer in accordance with Fed. R. Civ. P. 33(d) with its anticipated ESI production. Defendant shall also provide all nonprivileged responsive communications in response to RFP 27 to the extent it has not already done so.

- Interrogatory No. 6 and RFP 28 ask Defendant to "set forth the actual monetary costs and describe all non-monetary burdens directly related to providing Plaintiff reasonable accommodation following his September 2020 stroke" and to produce documents regarding the same.
  - Defendant answered it "incurred financial and operational burdens during the period that it accommodated Plaintiff's restrictions until his physician represented that they were permanent." Defendant answered it "relied on Claims Representatives from other territories to cover Plaintiff's property claims requiring climbing ladders or ambulating on roofs in his 13,000+ square mile territory. That arrangement carried financial costs, such as travel expenses, hotel accommodations, vehicle wear and tear, and operational costs because each Claim Representative was primarily responsible for his own geographic territory. Defendant further answers these recurring travel arrangements in Plaintiff's territory was not operationally sustainable. Defendant was also forced to retain an

independent adjusting firm to inspect roofs and elevated structural damage in Plaintiff's territory."

o   Plaintiff contends Defendant's answer contains "vague, sweeping, and unsubstantiated allegations" that are inadequate to address Defendant's alleged undue hardship from Plaintiff's accommodations.

o   During the telephone conference, Plaintiff argues that Defendant only used 5 to 6 outside adjusters 10 to 12 times a year to adjust Plaintiff's climbing claims, so it would not be difficult for Defendant to ask the adjustors how many climbing claims they handled, or to ask them how often they used a drone.  Plaintiff also states Defendant has produce no documents regarding the independent adjusting firm it hired, including communications or bills.

o   Defendant responds it has provided responsive documents, including expense reports for adjusters who traveled to Plaintiff's territory to handle claims due to his physical restrictions, as well as the claim notes for each claim in Plaintiff's territory, which also reflect whether outside adjusters were retained to assist with Plaintiff's claims. Defendant further responds that it does not keep that information in one place or in one "master" document, but instead produced all the documents containing this information throughout.  Defendant kept each claim file for each claim in Plaintiff's territory during his period of his disability. Defendant has produced all these claim files and notes, which Plaintiff describes as a 31,000 page document dump.

o   Defendant further responds it has identified each adjuster at Nodak who was licensed to use a drone, described the circumstances under which a drone is used and deployed, and in its most recent supplement produced documents reflecting drone flight information and log history indicating the drone usage by different operators.  But, Defendant keeps no internal record tracking drone usage by claim.

The Court finds that, although Defendant's answer to this interrogatory generally describes that it incurred non-monetary and financial burdens, Defendant does not set forth with specificity any of the actual costs or burdens.  If Defendant believes it has produced business records and documents that have answered this interrogatory, Defendant must specify the records

that must be reviewed.  See Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.").  Accordingly, the Court will direct Defendant to supplement its answer to this interrogatory.

Plaintiff's primary issue with Defendant's response to this RFP (and the majority of his other RFPs) is that Defendant "dumped" 31,000 pages of documents on Plaintiff.  Federal Rule of Civil Procedure 34 provides two alternatives for a party in producing documents responsive to requests propounded under Rule 34.  Fed. R. Civ. P. 34(b)(2)(E)(i).  It provides that a party must either (1) "produce documents as they are kept in the usual course of business," or (2) "organize and label them to correspond to categories in the request."  *Id.*  "Producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34."  See *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001).  "[T]he producing party does have a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought under Rule 34." 8B James A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2213 (3d ed. 2010).  "Under Rule 34(b), the responses must allow the requesting party to readily determine which documents are responsive to which request."  *GP Indus., LLC v. Bachman*, No. 8:06CV50, 2007 WL 4245786, at *5 (D. Neb. Nov. 29, 2007).  The party asserting that the documents were produced in the form in which they were kept in the usual course of business bears the burden to convince the court that this is true. *Johnson v. Charps Welding & Fabricating, Inc.*, No. 14-CV-2081 (RHK/LIB), 2017 WL 9516243, at *21 (D. Minn. Mar. 3, 2017).

Additionally, the same rules that apply to producing documents under Rule 33(d) are generally applicable to Rule 34. See *Graske v. Auto-Owners Ins. Co.*, 647 F. Supp. 2d 1105, 1108 (D. Neb. 2009) (finding insurance company's responses were insufficient because it "produced nearly 7000 pages of documents in response to plaintiffs' discovery requests, and although the

documents were divided into seven files, the documents were not accompanied by any indices or other tool to guide plaintiffs to the responsive documents."). "[A] respondent's unwieldy filing system does not excuse its production of requested documents in usable form when they are properly requested under Rule 34." *N. Nat. Gas Co. v. TEKSystems Glob. Applications, Outsourcing, L.L.C.*, No. 8:05 CV 316, 2006 WL 6886660, at *2 (D. Neb. Sept. 6, 2006).

Due to the nature of the informal discovery dispute call, the Court has a somewhat incomplete record regarding whether Defendant's production complies with Rule 34(b). Defendant represents it has produced responsive documents as they are kept in the usual course of business. Specifically, Defendant states it kept a claim file for each claim in Plaintiff's territory during his period of his disability, that Defendant has produced all these claim files, and that all the information Plaintiff seeks is contained within those claim files. Defendant does not keep that information in one place or in one "master" document. On the other hand, Plaintiff indicates the 31,000 page document dump is not useful, and would require Plaintiff to search thousands of pages for the requested information. "Producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34." *Wagner*, 208 F.R.D. at 610. The Court has no information that Defendant provided "any indices or other tool" to guide Plaintiff to the responsive documents. Accordingly, the Court will instruct Defendant to provide some sort of index, tool, or other mechanism of organization such that Plaintiff is not required to search 31,000 pages of documents for the information responsive to his requests. The Court realizes that is somewhat of a vague instruction; however, based on the record before it, it appears Defendant should be able to do more to "guide plaintiff[] to the responsive documents." See *Graske*, 647 F. Supp. 2d at 1108.

- Interrogatory No. 7 and RFP 29 ask, "From September 2020 through February 2022, please identify each task/job that was reassigned to or from Plaintiff due to Plaintiff's physical restrictions. For each task/job reassigned to or from the Plaintiff, please identify the date, the task, the individual who was originally responsible for the task/job, and the individual who was reassigned the task/job," and ask Defendant to produce documents regarding the same.

  - Defendant answered that Plaintiff's physical restrictions prevented him from performing any work beginning in September 2020. In October 2020, Plaintiff's

treating physician cleared him to return to work subject to an hour limitation and various physical restrictions. These physical restrictions prevented Plaintiff from working in the field and adjusting any property or material damage claims. Then, on March 26, 2021, Plaintiff provided updated work restrictions indicating he was to avoid ladders and climbing or ambulating on roofs. From that point through the end of his employment, Plaintiff could not handle property claims involving roofs or elevated structural damage, and those claims were resolved by the other Claims Representatives described in its answer to Interrogatory No. 6.

o Defendant states it also provided extensive documentation reflecting which claims within Plaintiff's territory were handled by other adjusters.

o Plaintiff states Defendant produced 31,000 claim file documents rather than answering this interrogatory.

The Court's ruling is the same as above. If Defendant believes it has produced business records and documents that have answered this interrogatory, Defendant must specify the records that must be reviewed. See Fed. R. Civ. P. 33(d). Defendant is instructed to provide some sort of index, tool, or other mechanism of organization such that Plaintiff is not required to search 31,000 pages of documents for the information responsive to his requests under Rule 34.

- Interrogatory No. 8 and RFP 30 ask, "During Plaintiff's tenure of employment, please identify the total number and type/nature of claims that Plaintiff was assigned, and the number of claims that required Plaintiff to climb a ladder or be on a roof" and requests production of documents regarding the same. Somewhat relatedly, RFP 42 asks, "For years 2020 through the present, non-privileged documents which reflect the total number, type/nature, and location of each claim handled by each claims adjuster in Nebraska. This should include whether the claim required climbing on ladders or roofs." RFP 44 asks Defendant to produce, "From September 2020 through February 2022, all non-privileged material communications and documents which reflect the number of claims in Plaintiffs territory that were reassigned to a different adjuster due to Plaintiffs climbing restrictions." RFP 46 asks Defendant to produce, "From January 2020 through February 2022 through the present, all non-privileged material communications and documents

which: (a) reflect the identity of all independent adjuster(s) hired to adjust claims in the territory previously assigned to the Plaintiff, (b) the number, location and type of claims assigned to said independent adjuster(s), (c) the reasons relating to and/or necessitating the hiring of said independent adjuster(s), and (d) all monies paid to said independent adjusters."

- o Plaintiff asserts Defendant's answer is insufficient because, as above, Defendant produce 31,000 claim file documents, but the documents do not reflect which claims, if any, were reassigned to Plaintiff following his stroke and climbing restriction.

- o Defendant maintains it fully answered this interrogatory.  It answered, "Plaintiff was responsible for handling all types of property and material damage claims within his defined territory. Property claims relate primarily to losses sustained on homeowner and farm and ranch policies. The most common property claims involved losses caused by weather, wind, or hail (or combination of each). Property adjusters like Plaintiff carry ladders with them to every claim in the likely event it is needed to complete an inspection. Indeed, climbing ladders onto home rooftops is common, as the roof is the area that is most affected by weather events. Many customers in Plaintiffs territory also carried farm and ranch policies. Claims made pursuant to such policies also involved climbing to inspect large structures like bins, pole buildings, barns, and other property common to farms or ranches. Material damage policies may cover automobiles, campers/RV, watercraft, farm machinery, or similar motorized vehicles or mobile equipment. The use of ladders  for processing material damages claims is less common than property claims, but it is not uncommon. For instance, inspection of utility trailers, livestock trailers, motorhomes, campers, or other similar equipment commonly insured under a material damage policy would often require climbing and/or the use of a ladder."  Defendant also indicated its production of claim files and notes contain information responsive to this interrogatory.

- o Defendant objected to RFP 42 as overly broad, unduly burdensome, disproportionate to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence in seeking documents reflecting information

for each and every claim Defendant has received in the state of Nebraska over a three-and-a-half year period.  Defendant also refers Plaintiff to the 31,000 pages of documents produced.

o   Defendant objected to RFP 44 as overly broad, unduly burdensome, and disproportionate to the needs of this case. Defendant states it "received thousands of claims in Plaintiffs territory between September 2020 and February 2022, and the documents and communications related to those claims that required reassignment or other adjuster assistance as a result of Plaintiff's restrictions are not segregated in any way from the rest." Subject to its objections, Defendant replied it "is producing the claim files and notes for all claims in Plaintiff's territory between September 2020 and February 2022, which reflect the degree to which other Nodak adjusters or independent adjusters assisted on the claims."

The Court's ruling is the same as above.  If Defendant believes it has produced business records and documents that have answered this interrogatory, Defendant must specify the records that must be reviewed.  See Fed. R. Civ. P. 33(d).  Defendant is instructed to provide some sort of index, tool, or other mechanism of organization such that Plaintiff is not required to search 31,000 pages of documents for the information responsive to his requests under Rule 34.

- Interrogatory No. 9 and RFP 31 ask Defendant to, "For each position for which Plaintiff applied in 2022, please describe all reasons why he was not selected, describe why the successful candidate was selected, and fully describe all substantive non-privileged communications and identify all nonprivileged documents between defendant's employees regarding the matters identified herein. Please identify the disability status of all persons who applied, selected, and/or involved and/or consulted about each hiring decision," and request production of documents regarding the same.  Relatedly, RFP 32 requests Defendant to produce "copies of all applications submitted by all applicants, all related applications, interview, reference, testing, hiring, and related documents" for each employment application submitted by Plaintiff to Defendant in 2022.  And, RFP 33 asks Defendant to produce "copies of the compensation package, pay, job evaluations,

counseling and disciplinary actions, job duties, and requests for accommodation" for each person selected for the positions sought by Plaintiff in 2022.

o Defendant objects to these requests as overly broad, unduly burdensome, disproportionate to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence in calling for the production of voluminous personnel records for non-party employees. Defendant further objects to this request on employee privacy grounds.

o Defendant maintains it has fully answered the interrogatory by answering, "Plaintiff applied for a Liability Claims Representative position in mid-February 2022. Plaintiff was not the most qualified candidate for the role. Plaintiff had not worked on liability claims since 2004, and even then, liability only comprised a small percentage of his claim load. The individual hired for the role, Joanne Greenwood, had significant prior experience as a casualty and liability claims representative. Moreover, Plaintiffs interview undermined his suitability for the role. Namely, he represented that he had a tendency to jump to conclusions, which is a problematic quality for a liability/ casualty claim position that requires objectivity and thoroughness. Defendant supplemented its answer to include the information that "Plaintiff's interview for the position was attended by Chris Oen, Ann Shipley, and Rich Laber, and the group had a verbal discussion concerning Plaintiffs interview after it was completed. Chris Oen made the decision to hire Ms. Greenwood, in consultation with Pat Duncan."

o Defendant states it produced the pay package, job description, notes from Plaintiff's interview, the successful candidate's application and resume, offer letter, and compensation package. Defendant does object to producing information regarding her subsequent performance because that could not have had any bearing on the hiring decision.

o Plaintiff states they did not produce the interview notes from the successful applicant.

▪ Defendant responds Defendant does not have interview notes for the candidate that they hired. Defendant did identify the individuals involved

in this interviewing and hiring decision. Defendant is withholding subsequent performance records.

The Court finds Defendant has sufficiently answered this interrogatory and responded to these RFPs. Plaintiff has not established how the subsequent performance of the successful candidate is relevant to his claims or the defenses, or if there is any minimal relevance, that it outweighs the non-party employee's privacy.

- Interrogatory No. 10 and RFP 35 ask, "For years 2019 through the present, please identify all employees (by name and position held) who were provided a drone in connection with their employment and identify the number of times each person used the drone in connection with their employment" and request production of documents regarding the same. Relatedly, RFP 48 asks "For the time period January 2021 through the present, all non-privileged documents which relate to the following: (a) the process and cost of certifying an employee to use a drone to adjust claims, (b) the cost of a drone used by an adjuster to adjust claims, (c) problems associated with using drones to adjust claims; and (d) number and type of claims adjusted using a drone."
  - Plaintiff states he is seeking discovery regarding the number of times drones were used by Nebraska adjusters, suspecting the answer "will likely contradict" Defendant's allegation that use of drones was expensive, problematic, and unreliable.
  - Defendant identified the following individuals licensed to use drones in connection with their employment: Matt Horner, Brian McManigal, Trent Petersen, Michael Schiltz and Michael Riskeit.
  - In Defendant's supplemental response to RFP 35, Defendant responded it produced documents reflecting drone flight information (flight logs) by each operator, identifying by Bates number the pages for each name reflecting such drone usage.
  - Plaintiff just wants Defendant to ask those five individuals how many times they used drones. Plaintiff responds he should not have to sift through 31,000 documents that do not clearly identify drone use. Plaintiff asserts the 31,000

documents do not identify which claims were reassigned to a different adjuster because they were climbing claims. Plaintiff also asserts Defendants have not produced any documents regarding independent adjustor's assigned to work Plaintiff's climbing claims. Plaintiff also says the claim files do not specifically identify which claims were adjusted with a drone.

The Court finds Defendant has adequately responded to these discovery requests at this time. However, the Court would be inclined to permit Plaintiff to propose Rule 30(b)(6) deposition topics requiring Defendant to fully testify and answer this line of questioning.

- Interrogatory No. 11 and RFP 36 ask, "For the time period of 2018 through 2022, please identify all employees and applicants for employment who requested reasonable accommodation, describe the requested accommodations, state the cost and/or burden of the accommodation, assessments/analysis conducted and results thereof, Defendant's response thereto, position held at the time of each request and currently, and if no longer employed, please describe the reasons for the separation," limited to requests for accommodation involving HR Director Ann Shipley, and requests production of documents regarding the same.
  - o Defendant's supplemental answer identifies two individuals who requested accommodations.

The parties did not specifically address these requests during the telephone call, and it appears from the dispute chart that Defendant has answered and produced documents responsive to this request. The Court deems Defendant's responses adequate.

- RFP 11 requests, "Copies of all non-privileged material documents, emails, or text messages of any current or former management and/or human resource employee and/or Nebraska claims adjuster that relates or refers to Plaintiffs claims of discrimination, retaliation, requests for reasonable accommodation and/or accommodations considered by and/or suggested regarding Plaintiff and/or applications for employment."

24

o Defendant objects to this request as the term "material" is vague, ambiguous, and susceptible to multiple interpretations or meanings. Defendant also objects to this request as vague and ambiguous in its reference to "management" employees and in its request for documents and communications regarding Plaintiff "and/or applications for employment." Defendant further objects to this request as overly broad, unduly burdensome, and disproportionate to the needs of this case in failing to identify any custodians and/or parties to the requested communications, which would require Defendant to conduct a search of any and all current or former management or human resources employees, regardless of whether those individuals have any relation to this case.

The parties did not specifically address this request during the telephone call, and it appears from the dispute chart that Defendant intends to supplement its response with its anticipated ESI production.  Accordingly, the Court will instruct Defendant to supplement as appropriate.

- RFP 20 requests "any and all non-privileged documents, recordings and videos that reflect statements(s) or admissions(s) made by the Plaintiff or any person on Plaintiff's behalf that Defendant contends are against the Plaintiff's interest regarding the subject matter of this action."
    - o Defendant objects to this request as calling for the disclosure of information protected by the  attorney-client privilege and/or work product doctrine. Defendant also objects to this request on the grounds that it is overly broad, unduly burdensome, and disproportionate to the needs of this case.
    - o Plaintiff seeks non-privileged statements or admissions made by Plaintiff or on his behalf that are against his interests.

The parties did not specifically address this requests during the telephone call.  According to the dispute chart, Defendant has produced all responsive documents, but also maintains its work product objection. The Court cannot assess the legitimacy of the work-product privilege on

25

the record before it, but based upon Defendant's representation it has produced all responsive documents, the Court will deem this issue resolved.

- RFP 26: Please produce all material non-privileged documents and communications (electronic, written, audio, video, or verbal) between any persons known of by the defendant that relate to Plaintiffs allegations of discrimination, harassment, retaliation, requests for reasonable accommodation, and defendant's response thereto.
  - o Defendant objects to this request on the grounds that "material" and "persons known of by the defendant" are vague, ambiguous, and susceptible to multiple interpretations or meanings. Defendant further objects to this request as overly broad, unduly burdensome, and disproportionate to the needs of this case in requesting all documents and· communications regarding Plaintiffs allegations while failing to identify any custodians and/or· parties to the requested communications.
  - o Plaintiff limited the phrase "known of by defendant" to "known by Defendant's management level and HR employees."
  - o Defendant states it has already produced responsive documents, and would supplement with ESI.

The parties did not specifically address this request during the telephone call, and it appears from the dispute chart that Defendant intends to supplement its response with its anticipated ESI production.  Accordingly, the Court will instruct Defendant to supplement as appropriate.

- RFP 38 asks Defendant to produce "all non-privileged documents and communications that touch upon Defendant's denial and/or approval of Plaintiffs requests for reasonable accommodation as well as considered, suggested and/or proposed reasonable accommodations for Plaintiff and/or investigations/analysis undertaken and findings thereof."
  - o Defendant states it produced responsive docs in its response to RFP 27, and in its supplemental answer identified Bates numbers DEF 00438 - DEF 00439.

26

The parties did not specifically address this requests during the telephone call. According to the dispute chart, Defendant has produced responsive documents, and will supplement as necessary with its ESI production. Accordingly, the Court will instruct Defendant to supplement as appropriate.

- RFP 41 asks for Defendant's tax returns for 2021 through the present.
    - Defendant objects that this information is not relevant. Defendant also suggests its profits and revenue could be produced as a more narrowly tailored approach closer to trial for purposes of punitive damages.
    - Plaintiff maintains Defendant's tax returns are relevant to Defendant's undue burden defense because Defendant's financial status is relevant for that inquiry, since Defendant asserts it incurred financial burdens. It is also relevant for Plaintiff's request for punitive damages.

Tax returns "are not absolutely privileged from civil discovery, but a heightened showing of relevance and necessity is required before discovery will be permitted." *Home Instead, Inc. v. Florance*, 2013 WL 5979629, at *9 (D. Neb. Nov. 8, 2013) (citing *Flores v. Tyson Foods, Inc.*, 2013 WL 1091044 at *5 (D. Neb. Mar. 15, 2013)). This court has adopted a two-prong approach to determining whether tax returns should be disclosed. First, the court should analyze whether "the moving party has established that the tax returns are relevant to the parties' dispute." *Id.* "If the requesting party demonstrates relevance, then "the responding parties must produce the returns unless they show there is no compelling need for production of the returns; that is, the relevant information within the returns is readily obtainable from another source." *Id.*; see also *Davis v. Ak-Sar-Ben Vill., L.L.C.*, No. 8:18CV101, 2020 WL 1332288, at *5 (D. Neb. Mar. 23, 2020).

Plaintiff has demonstrated Defendant's tax returns are relevant. Defendant claims Plaintiff's requested accommodation caused Defendant to incur financial burdens, and that Plaintiff's continued employment would have caused Defendant an undue hardship. Although there is no precise test for what constitutes a reasonable accommodation, "an accommodation is unreasonable if it either imposes undue financial or administrative burdens, or requires a

27

fundamental alteration in the nature of the program." *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir.1999) (internal quotation marks and citation omitted).  Once a plaintiff has shown that a reasonable accommodation is possible, the burden shifts to the defendant to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002).  "Hardship is 'undue' under the ADA only if it involves 'significant difficulty or expense,' when considered in light of several statutory factors, including 'the nature and cost of the accommodation needed,' the economic and operational impact on the facility involved, the overall size and resources of the employer, and the employer's 'type of operation' including its workforce's structure and functions." *Lee v. Seasons Hospice*, No. 22-CV-1593 (PJS/DJF), 2023 WL 6387794, at *10 (D. Minn. Sept. 29, 2023) (quoting 42 U.S.C. § 12111(10)(A)-(B)).

Defendant's financial condition is certainly an appropriate area of discovery when assessing the burden of the financial costs associated with Plaintiff's requested accommodations. The Court understands Defendant's concerns regarding privacy in its tax documents.   If Defendant can produce other documentation that Plaintiff agrees is sufficient to assess Defendant's financial condition in lieu of tax returns, the Court will not compel Defendant to produce tax returns.   However, in the absence of such agreement or further showing that "relevant information within the returns is readily obtainable from another source," Defendant is instructed to produce the requested tax returns.

- RFP 43 asks for "Copies of non-privileged communications and documents for the person(s) hired to replace Plaintiff which directly and materially relate to the following topics: (a) job description, (b) applications, all related application materials, and pre-employment reference and background checks, (c) whether the individual has a disability or not, and if so, the nature of the disability, (d) all requests for accommodation, (e) Defendant's response to each request for accommodation, (f) the employee's assigned goals, production criteria, or quotas or other job related obligations, (g) the employee's job performance, (h) the employee's performance towards each assigned goal, criteria and/or quotas noted in (f) above, (i) evaluations, (j) counseling and disciplinary actions considered and/or issued, and (j) employee's use of a drone (including the identity of the

person who approved the drone use, the time period in which the drone was used; number of claims adjusted since hiring, number of claims adjusted using a drone)."

- o Plaintiff asserts information regarding his replacement is relevant because she was "incompetent" and refused to do work. Plaintiff believes Defendant incurred costs to accommodate this replacement employee, which costs are relevant when assessing whether Plaintiff's requested accommodations were an undue burden upon Defendant.

- o Defendant objected that this RFP was overly broad, unduly burdensome, and disproportionate to the needs of this case, but produced application and hiring material for the individual hired to replace Plaintiff, Danelle Nelson, at Bates numbers DEF 00321-DEF 00347. Defendant also supplemented its answer to state Danelle Nelson has no known disability and has not requested an accommodation during her employment.

- o Defendant asserts Plaintiff did not ask for information regarding Nodak's retention or hiring of independent adjustors to shoulder the burden of the replacement's alleged poor performance. Defendant did object to producing documents regarding the replacement's performance because Plaintiff was not terminated for poor performance.

After review, the Court will sustain Defendant's objections and finds it has adequately responded to this RFP.

- • RFP 49 asks for "All non-privileged material documents and communications which directly relate to and/or reflect the interactive and/or deliberative process engaged in by the parties regarding Plaintiff's requests for reasonable accommodation."

- o Defendant responded it has produced responsive documents including documents Bates numbered DEF 00154 - DEF 00233, and is conducting an ESI search to supplement as appropriate.

- o Plaintiff asks Defendant to provide supplemental responses before depositions are scheduled.

As indicated by Defendant in the chart, it shall supplement this RFP with its ESI production as necessary.

- RFPs 51-52 ask Defendant to produce "all non-privileged material communications and documents" regarding Defendant's second and sixth affirmative defenses.
    - Defendant objected to this request because it is overly broad, unduly burdensome, and disproportionate to the needs of the case "to the extent it purports to require Defendant to identify and produce every document relating to its affirmative defense." Defendant responds it has produced responsive documents, but Plaintiff specifically requests Defendant cite to bates stamp numbers of the responsive documents prior to depositions. Defendant replies it has no obligation to provide Bates ranges, nor do these requests lend themselves to Bates ranges.

The parties did not specifically address these RFPs during the call. The Court finds Defendant's responses to these RFPs is adequate, and it does not have to identify by Bates stamp number the documents as requested.

**IT IS ORDERED**:

1. The parties shall supplement their discovery responses as set forth above within 30-days of this Order.
2. The parties shall submit a jointly proposed amended case progression order to the undersigned magistrate judge within 14-days of this Order.

Dated this 23rd day of May, 2024.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

30